IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| AXA EQUITABLE LIFE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) No. 3:11-cv-0618 ) Chief Judge Haynes |
| v. | ) ) |
| JASON A. GRISSOM, et. al., | ) ) |
| Defendants. | ) |

## MEMORANDUM

Plaintiff, AXA Equitable Life Insurance Company ("AXA"), a New York corporation, filed this action under 28 U.S.C. § 1332, the federal diversity statute, and 28 U.S.C. § 2201, the declaratory judgment statute, against the Defendants: Jason A. Grissom, individually and in his official capacity as executor of the estate of his deceased father, Daniel M. Grissom; Daniel B. Grissom; Joshua S. Grissom (collectively, the "Grissom sons"); and Lolita Camp, Daniel M. Grissom's surviving spouse, all of whom are Tennessee citizens. The gravamen of Plaintiff's claim is that in good-faith error, Plaintiff distributed to the Grissom sons, instead of Camp, the death benefits from the deceased Daniel Grissom's pension plan annuity ("the Plan"). AXA sought the this Court's determination as to the proper beneficiary of the Plan's annuity.

The Grissom sons filed an answer and counterclaim, as well as a crossclaim against Camp (Docket Entry No. 28), contending, in essence: (1) that Camp executed a valid prenuptial agreement waiving any claims to Grissom's estate, including the Plan benefits; (2) that the Grissom sons were the proper beneficiaries under the Plan; and (3) that Grissom's prenuptial agreement and estate planning documents, considered as a whole, reflected Grissom's intention not to designate Camp as his beneficiary under the Plan.

1

Camp filed an amended answer and counterclaim against AXA, as well as a crossclaim against the Grissom sons. (Docket Entry No. 30). As to AXA, Camp contended: (1) that Camp was the proper beneficiary under the Plan; (2) that AXA negligently failed to pay the benefit to her; and (3) that AXA's negligence caused her damages, including attorney's fees. Id. at 5-7. Camp's crossclaims against the Grissom sons were: (1) that Camp was the proper beneficiary under the Plan; (2) that AXA erroneously disbursed a portion of the Plan's benefit to Joshua S. and Daniel B. Grissom; (3) that Camp had neither a duty nor obligation to provide any benefit to the Grissom sons; and (4) that the Grissom-Camp prenuptial agreement was invalid or inconsequential to the Plan's beneficiary designation. Id. at 7-9.

AXA and the Grissom sons agreed to a preliminary injunction restraining and enjoining the Grissom sons from withdrawing additional funds from their accounts, restraining and enjoining them from spending, transferring, encumbering, dissipating, using, or in any way disposing of the previously withdrawn funds, and restraining and enjoining Jason, as executor of Grissom's estate, from distributing the remainder of the death benefit to Daniel B. or Joshua S. Grissom. (Docket Entry No. 17).

The Grissom sons next filed a motion to dismiss Camp's cross claims and a motion for summary judgement (Docket Entry Nos. 42 and 100). AXA filed a motion for judgment on the pleadings challenging the Grissom sons' counterclaim. (Docket Entry No. 52). Camp also filed two motions for summary judgment, one against AXA and the Grissom sons, contending that Camp is the proper beneficiary under the Plan and that AXA's negligence forced Camp to incur attorneys' fees. (Docket Entry Nos. 48, 40, 56 and 57).

The Court resolved all of the parties' motions and concluded that the prenuptial agreement was valid, that the prenuptial agreement expressly listed the plan as separate property

2

and that Camp expressly agreed not to assert any claims against the Plan. (Docket Entry No. 102 and 103). In addition, the Court awarded the Plan's benefits to the Grissom sons in accordance with the prenuptial agreement and all remaining motions were deemed moot. Id.

Before the Court is the Grissom sons' motion for attorneys' fees and costs (Docket Entry No. 108), contending, in sum, that the prenuptial agreement expressly provides for attorneys' fees. Id. at 2. In response, Camp contends that the Grissom sons' motion is untimely and that the Grissom sons are not entitled to attorneys' fees because the attorneys' fee provision in the prenuptial agreement is reserved to the parties and their successors in interest. (Docket Entry No. 112). The Court considers the Grissom sons' motion for attorneys fees because, under the Local Rules, the motion is timely as filed within thirty days of the entry of judgment.[1]

## A. Conclusions of Law

When jurisdiction is based upon the diversity of citizenship of the parties, "state substantive law is used when interpreting contractual provisions." Woodruff v. Nat'l Life Ins. Co., 341 Fed. Appx. 113, 117 (6th Cir. 2009). "In diversity cases, attorneys' fees are governed by state law." Hometown Folks, LLC v. S & B Wilson, Inc., 643 F.3d 520, 533 (6th Cir. 2011). Under Tennessee law, "a party in a civil action may not recover attorney's fees absent a specific contractual or statutory provision providing for attorney's fees as part of the prevailing party's damages." House v. Estate of Edmonds, 245 S.W.3d 372, 377 (Tenn. 2008). Accordingly, "litigants must pay their own attorney fees unless there is a contract or contractual provision providing otherwise." Taylor v. Fezell, 158 S.W.3d 352, 359 (Tenn. 2005). "[P]renuptial

---

[1] Local Rule 54.01(b)(1) provides: "[u]nless otherwise provided by statute or order of the Court, a motion for an award of attorneys' fees and related nontaxable expenses shall be filed within thirty (30) days from the District court's entry of final judgment in the case." Local Rule 54.01(b)(1). Here, the Grissom sons filed their motion for attorneys' fees and costs on October 10, 2012, twenty-nine (29) days after the entry of judgment (September 11, 2012) in this action.

agreements are to be interpreted and enforced as any other contract." In re Estate of Wiseman, 889 S.W.2d 215, 217 (Tenn. App. Ct. 1994).

Here, the prenuptial agreement provides for attorneys' fees. In a contract providing for attorneys' fees, "[c]ourts enforce [those] contracts . . . 'according to their plain terms.'" VRF Eye Specialty Grp., PLC v. Yoser, 765 F. Supp. 2d 1023, 1033 (W.D. Tenn. 2011) (quoting Bob Pearsall Motos, Inc. v. Regal Chrysler–Plymouth, Inc., 521 S.W.2d 578, 580 (Tenn. 1975)).

Here, the prenuptial agreement expressly provides for attorneys' fees:

> **32. ATTORNEYS' FEES IN ENFORCEMENT.** A party who fails to comply with any provision or obligation contained in this agreement shall pay the other party's attorneys' fees, costs and other expenses reasonably incurred in enforcing this agreement resulting from the noncompliance.

(Docket Entry No. 1-8 at 9-10) (emphasis added). Yet, the prenuptial agreement limits the enforceability of the agreement:

> **28. BINDING AGREEMENT/NO OTHER BENEFICIARY.** This agreement shall be binding upon the parties, and upon their heirs, executors, personal representatives, administrators, and assigns. **No person shall have a right or cause of action arising or resulting from this agreement except those who are parties to it and only their successors in interest.**

Id. at 9 (emphasis added).

"A successor in interest is 'one who follows in ownership or control of property.'" Jones v. Parker, 1993 WL 453756, at *2 (Tenn. App. Ct. Nov. 2, 1993) (citing Black's Law Dictionary 1283 (5th ed. 1979)). A successor in interest may be distinct from a beneficiary, "[a] person for whose benefit property is held in trust." Black's Law Dictionary (9th ed. 2009). The Tennessee Code Annotated defines "successor in interest" as "the beneficiar[y] under the settlor's will, if the settlor has a will, or in the absence of an effective will provision, the settlor's heirs at law." Tenn. Code Ann. § 35-15-103.

4

Camp asserts that she does not owe attorneys' fees to the Grissom sons because the prenuptial agreement provides that the attorneys' fee enforcement provision is reserved only to "the parties to the Agreement or Mr. Grissom's successor in interest as to the Plan, not merely the beneficiary claimants to the death benefit." (Docket Entry No. 112 at 4). Camp cites the prenuptial agreement that: "[n]o person shall have a right or cause of action arising or resulting from this agreement except those who are parties to it and only their successors in interest." Id. at 2 (citing Docket Entry No. 1-8, Prenuptial Agreement). In addition, Camp contends that the Grissom sons cannot enforce the prenuptial agreement because they are not intended third-party beneficiaries of the prenuptial agreement. (Docket Entry No. 112 at 6). Instead, Camp asserts that the Grissom sons are incidental beneficiaries that "offer no proof of intent between the parties to the Agreement that the Agreement was entered into for the benefit of the Sons." Id. Camp contends that the intent of the parties is evidenced by the agreement:

> **2. PURPOSE OF AGREEMENT.** Both parties currently own assets, and anticipate acquiring additional assets, which each wishes to continue to control and they are executing this Agreement to fix and determine their respective rights and duties during the marriage in the event of a divorce or dissolution of the marriage, or on the death of one of the parties. Further parties intend that all property owned by either of them at the time of the marriage shall remain thereafter the separate property of the party who owns the property.

Id. at 7 (citing Docket Entry No. 1-8, Prenuptial Agreement).

The Grissom sons contend that Camp's wrongful action of filing a claim for the Plan benefits caused the Grissom sons to "expend the time, costs, and attorney's fees" in this action. (Docket Entry No. 110 at 3). The Grissom sons assert that the "nature of a Prenuptial Agreement is to preserve the estate" and "Camp's violation of the Agreement has significantly diminished the amount the Sons' will receive and has prevented them from utilizing their funds for well over a year." Id. The Grissom sons assert that because Camp violated "multiple

5
Case 3:11-cv-00618   Document 119   Filed 11/21/12   Page 5 of 8 PageID #: 1368

provisions by challenging the validity of the Prenuptial Agreement" and as such owes attorneys' fees and expenses to the Grissom sons in the amount of $36,964.00. Id. at 2.

Here, the Grissom sons are "not merely the beneficiary claimants to the death benefit" as Camps suggests. (Docket Entry No. 112 at 4). Instead, the Grissom sons are the successors in interest to Mr. Daniel Grissom by virtue of their position as beneficiaries under Mr. Grissom's will and as being Mr. Grissom's heirs at law. As the Court concluded in prior rulings, the prenuptial agreement between Camp and Mr. Grissom was entered into freely and knowledgeably. (Docket Entry No. 103). Camp violated the provisions of the prenuptial agreement by submitting a claim for the Plan's benefits. As such, under the plain and express terms of the prenuptial agreement, Mr. Grissom's successor in interest may enforce the attorneys' fees provision. Thus, the Court concludes that the Grissom sons are Mr. Grissom's successors in interest and are entitled to enforce the attorneys' fees provision of the prenuptial agreement against Camp.

As to the amount of attorneys' fees, Tennessee courts consider the following in an award of attorneys' fees:

    1. The time devoted to performing the legal service.

    2. The time limitations imposed by the circumstances.

    3. The novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

    4. The fee customarily charged in the locality for similar legal services.

    5. The amount involved and the results obtained.

    6. The experience, reputation, and ability of the lawyer performing the legal service.

Id. at 535. Tennessee courts also consider the similar, although not identical, factors in the Tennessee Rule of Professional Conduct 1.5:

> (1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) The fee customarily charged in the locality for similar legal services;
>
> (4) The amount involved and the results obtained;
>
> (5) The time limitations imposed by the client or by the circumstances;
>
> (6) The nature and length of the professional relationship with the client;
>
> (7) The experience, reputation, and ability of the lawyer or lawyers performing the services;
>
> (8) Whether the fee is fixed or contingent;
>
> (9) Prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and
>
> (10) Whether the fee agreement is in writing.

Keisling v. Keisling, 196 S.W.3d 703, 729–30 (Tenn. Ct. App. 2005) (citing Tenn. Sup. Cr. R. 8, RPC 1.5 (2005)). Yet, "'the most critical factor is the degree of success obtained.'" Hometown Folks, 643 F.3d at 535 (quoting Hensley v. Eckerhart, 461 U.S. 424, 436 (1983)).

Here, the Grissom sons have filed counsel's affidavit along with detailed records of the counsel's invoices. The Grissom sons seek $225 per hour in fees performed by lead and associate counsel and $80 per hour in fees performed by a paralegal. (Docket Entry No. 108-1 at 2). Defendant Camp has not objected to the hourly rates nor any of the fees requested by the Grissom sons in the attorneys' fees motion. The litigation in this action has lasted since June 2011 and involved numerous complex issues of law and motions. In addition, the Grissom sons'

7
Case 3:11-cv-00618   Document 119   Filed 11/21/12   Page 7 of 8 PageID #: 1369

were the prevailing party in this action. Thus, after review of the factors under Tennessee law, the Court concludes that the hourly rates and fees are reasonable and should be awarded.

## B. Conclusion

For these reasons, the Court grants the Grissom sons' motion for attorneys fees and expenses and awards the Grissom sons attorneys' fees and expenses in the amount of $36,095.00.

An appropriate Order is filed herewith.

**ENTERED** this the 21st day of November, 2012.

WILLIAM J. HAYNES, JR.
Chief Judge
United States District Court